# EXHIBIT B

# LOAN AND SECURITY AGREEMENT

This Loan and Security Agreement ("Agreement") made as of October 2S , 2017, is by and between Amboy Group LLC, Debtor in Possession ("Borrower"), with an address at 1 Amboy Avenue, Woodbridge, NJ 07095, and Primary Capital Partners LLC ("Lender"), with an address at 641 Lexington Avenue, 17th Floor, New York, New York 10022.

## WITNESSETH:

WHEREAS, the Borrower desires to borrow from Lender the principal sum of FIVE HUNDRED THOUSAND and 00/100 Dollars ($500,000.00) ("Loan") in accordance with the terms and conditions of this Agreement, the Note, the financing statements, and any and all other documents, certificates and instruments executed and delivered by the Borrower in connection herewith to or for the benefit of the Lender ("Loan Documents"); and

WHEREAS, Borrower has requested that the Loan be memorialized in a $500,000 grid promissory installment note executed by Borrower (the "Note"); and

WHEREAS, in order to further induce Lender to make the Loan, Borrower has consented to liens being filed against certain property and assets;

NOW, THEREFORE, in consideration for the Loan, the mutual agreements, covenants, representations, warranties and obligations contained herein, the parties hereto agree as follows:

## ARTICLE 1

1.    **Representations and Warranties**.

1.1.    Capacity. Amboy Group LLC is a New Jersey limited liability company duly formed and validly existing under the laws of the State of New Jersey and is duly qualified to transact business in the State of New Jersey and in each and every other state in which it transacts business.

1.2.    Authority. Borrower has the full power, authority and legal right to execute and deliver, and to perform and observe the provisions of the Loan Documents. This Agreement and the Loan Documents are, or will be when delivered, the legal, valid and binding obligations of the Borrower enforceable against Borrower in accordance with their respective terms and conditions.

1.3.    Compliance. The execution and delivery of the Loan Documents will not result in the breach or default under the terms, conditions or provisions of any agreement to which Borrower is a party or by which Borrower is bound.

1.4.    Financial Statements. All financial information and other data supplied by Borrower, whether or not supplied by the Borrower or by Borrower's accountant, is true, correct and

complete as of the Closing Date, and the Borrower acknowledges that the Lender has relied upon such financial statements in its decision to make the Loan.

1.5. <u>Title to the Collateral.</u> The Borrower has good and marketable title to the Collateral (as defined hereafter) free and clear of all liens and encumbrances.

1.6. <u>Taxes.</u> The Borrower has filed for and paid in full all federal, state and local taxes to the extent such filings and payments were required prior to the date of this Agreement. All of such returns are true, correct and complete.

1.7. <u>Broker's Commissions.</u> No person is entitled to receive any broker's commission, finder's fee or similar fee or payment in connection with the consummation of the transactions contemplated by this Agreement.

1.8. <u>Independent Counsel.</u>  The Borrower has had an opportunity to consult with Bankruptcy counsel for the Debtor in Possession prior to executing and delivering this document and the other Loan Documents.


## ARTICLE 2

2.    **The Loan and Collateral.**

2.1.    <u>The Loan.</u> Subject to the terms and conditions and for the purposes hereinafter set forth, the Lender hereby agrees to make the Loan to the Borrower.

2.2.    <u>Security.</u> As security for the due and punctual payment of the Note, performance under the Loan Documents, and to secure any and all other loans and credit accommodations made by the Lender to the Borrower (hereinafter the "Obligations"):

(a)    The Borrower hereby grants to the Lender a security interest in all of the Borrower's "Accessions", "Accounts", "Inventory", "Equipment", "Fixtures", "Books and Records", "Chattel Paper", "Documents", "General Intangibles", "Instruments", "Investment Property", "Money", "Payment Intangibles", "Promissory Notes", "Securities", "Software" and "Supporting Obligations" as defined in the New Jersey Uniform Commercial Code ("UCC") (the "Personal Property") (the Personal Property is sometimes collectively referred to as the "Collateral").

## ARTICLE 3

3.    <u>Conditions for Closing</u>. On the Closing Date:

(a)    the Lender shall make the Loan to the Borrower, provided that the Borrower shall deliver to Lender (i) the Loan Documents executed by the Borrower; (ii) evidence of insurance relating to the Collateral, if any; and (iii) such other documents as may reasonably be required by Lender and its counsel.

(b)     All of the Orders entered by the Court at the time of the filing of the Chapter 11 Petition by the Borrower shall be in form and substance satisfactory to Lender.

(c)     The Court shall issue a written approval of this Agreement and such other documents including but not limited to the Grid Promissory Note executed simultaneously herewith in connection this this Agreement in form and substance satisfactory to Lender in its sole discretion.

## ARTICLE 4

4.      **Affirmative Covenants**. Borrower agrees that so long as the Loan or any other obligations (the "Obligations") of Borrower and/or any Guarantor to the Lender is outstanding, Borrower shall:

4.1.     Books and Records. Maintain books and records in accordance with Borrower's accounting standards and give representatives of the Lender access thereto at all reasonable times, including permission to examine, copy and make abstracts from any of such books and records and such other information as the Lender may from time to time reasonably request, and the Borrower will make available to the Lender for examination copies of any reports, statements or returns which the Borrower may make to or file with any governmental department, bureau or agency, federal or state.

4.2.     Financial Information. Furnish the  Lender the following financial information for the Borrower:

(a)     Annual tax returns of each person comprising the Borrower within thirty (30) days of filing.

(b)     Annual profit and loss statements for Borrower within one hundred twenty (120) days of fiscal year end.

(c)     Any other financial information that the Lender may reasonably request.

4.3.     Payment of Taxes and Other Charges. Pay and discharge when due all indebtedness and all taxes, assessments, charges, levies and other liabilities imposed upon the Borrower, its income, profits, property or business, except those which currently are being contested in good faith by appropriate proceedings and for which the Borrower shall have set aside adequate reserves or made other adequate provision with respect thereto acceptable to the Lender in its sole discretion.

4.4.     Maintenance of Existence, Operation and Assets. Do all things necessary to maintain, renew and keep in full force and effect the organizational existence of Borrower and Amboy Group and all rights, permits and franchises necessary to enable such entities to continue their respective business; continue in operation in substantially the same manner as at present; keep

- 3 -

their properties in good operating condition and repair; and make all necessary and proper repairs, renewals, replacements, additions and improvements thereto.

4.5.    Insurance. Maintain with financially sound and reputable insurers, insurance with respect to their property and business against such casualties and contingencies, of such types and in such amounts as is customary for established companies engaged in the same or similar business and similarly situated.

4.6.    Compliance with Laws. Comply with all laws applicable to the Borrower and to the operation of its business (including any statute, rule or regulation relating to employment practices and pension benefits or to environmental, occupational and health standards and controls).

4.7.    Timely Payment of Debts. Borrower will deliver timely payment of (i) all installments required pursuant to each and every offer and compromise with the IRS; (ii) all sums required pursuant to each and every stipulation of settlement; and (iii) installments of principal, interest, real estate taxes and other charges required to be paid pursuant to each and every mortgage and mortgage note to which each person or comprising Borrower is a party.

4.8.    Financial Covenants. Comply with all of the financial and other covenants, if any, set forth herein.

4.9.    Additional Reports. Provide prompt written notice to the Lender of the occurrence of any of the following (together with a description of the action which the Borrower proposes to take with respect thereto): (i) any Event of Default or potential Event of Default, (ii) any litigation filed by or against the Borrower, or (iii) any event which might result in a material adverse change in the business, assets, operations, financial condition or results of operation of any person comprising the Borrower.

4.10.    Borrower agrees to comply with all applicable laws and Court orders and directives including but not limited to such orders directly issued by the Bankruptcy Court having jurisdiction of the Borrower's Chapter 11 filing.

## ARTICLE 5

5.    **Negative Covenants.** The Borrower covenants and agrees that from the date of execution of this Agreement until the Loan and all Obligations have been fully paid, the Borrower without the Lender's prior written consent:

5.1.    Indebtedness. Incur any indebtedness for borrowed money other than: (i) the Loan and any subsequent indebtedness to the Bank; (ii) existing indebtedness disclosed on the Borrower's financial statements and/or in this Agreement; and (iii) indebtedness in respect of purchase money financings of personal property.

5.2.    Liens and Encumbrances. Except as provided in this Agreement, create, assume or

4822-3941-2306, v. 1

permit to exist any mortgage, pledge, encumbrance or other security interest or lien upon any assets now owned or hereafter acquired or enter into any arrangement for the acquisition of property subject to any conditional sales agreement.

      5.3.   <u>Guarantees</u>. Guarantee, endorse or become contingently liable for the bligations of any person, firm or corporation, except in connection with the endorsement and deposit of checks in the ordinary course of business for collection.

      5.4.   <u>Loans or Advances</u>. Purchase or hold beneficially any stock, other securities or evidences of indebtedness of any loans or advances to, or make any investment or acquire any interest whatsoever in, any other person, firm or corporation, except investments disclosed on the Borrower's financial statements or acceptable to the Lender in its sole discretion.

      5.5.   <u>Merger or Transfer of Assets</u>. Merge or consolidate with or into any person, firm or corporation or lease, sell, transfer or otherwise dispose of all, or substantially all, of Borrower's property, assets and business whether now owned or hereafter acquired.

## ARTICLE 6

      6.   <u>Events of Default</u>. Subject to any applicable notice and opportunity to cure set forth in the Note, any one or more of the following events shall constitute an Event of Default under this Agreement and the Loan Documents:

      6.1.   The occurrence of an Event of Default under the Note or other Loan Documents.

      6.2.   The Borrower shall default in the performance of any of the covenants or agreements contained in this Agreement or any other Loan Document.

## ARTICLE 7

      7.   <u>Lender's Remedies</u>.  In case one or more Events of Default shall have occurred, the Lender shall have the following rights and remedies:

      7.1.   At any time thereafter to declare the entire amount of the Loan and the other obligations to be immediately due and payable, whereupon the maturity of the then unpaid principal balance of the Loan and all other Obligations shall be accelerated and all interest accrued thereon shall forthwith become due and payable without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived.

      7.2.   Take any action at law or in equity to collect the sums due and owing on the Loan or any of the obligations or to enforce performance and observance of any obligation, agreement or covenant of the Borrower under this Agreement or any other Loan Document.

- 5 -

7.3.    Exercise any and all rights and remedies conferred upon secured parties by the Uniform Commercial Code and other applicable laws and statutes.

7.4.    Upon a default by Borrower, Lender shall, at its option, upon three (3) days written notice to Borrower be entitled to enter upon the premises at 1 Amboy Avenue, Woodbridge, NJ to take immediate possession of the Personal Property. Upon request by Lender, Borrower shall assemble and make the Personal Property available to Lender at a place designated by Lender. Lender may retain the Collateral in partial satisfaction of the Loan, or sell all or any portion of the Collateral at public or private sale. In the event that Lender elects to proceed under a public or private sale as to the Collateral and notification of intended disposition of any of the Collateral is required by law, such notification, shall be deemed reasonably and properly given if mailed, at least five (5) days before such disposition, postage prepaid, addressed to the Borrower at the address of Borrower. Borrower agrees that a commercially reasonable manner of disposition of the Collateral on a default shall, at the option of Lender, include, but not be limited to, a sale of the Collateral, in whole or in part, at a public or private sale, in the sole and absolute discretion of the Lender.

7.5.    Without limiting the foregoing, and exercising its remedies upon the occurrence of an Event of Default, the Lender (i) shall not be responsible or liable for any shortage, discrepancy, damage or loss or destruction of any part of the Collateral wherever the same may be located regardless of the cause thereof unless the same shall happen through its gross negligence or wilful misconduct; (ii) shall be entitled to the appointment (without notice and without proof of diminution in value of the Collateral) of a receiver to take possession of all or any portion of the Collateral and to exercise such powers as the court shall confer upon the receiver; and (iii) generally may perform all acts necessary or proper to carry out the intention of this Agreement, as fully and completely as though the Lender were the absolute owner of the Collateral for all purposes, and the Borrower hereby ratifies and confirms all that the Lender shall do by virtue of this grant of power.

7.6.    The Lender's failure to accelerate for any cause shall not prevent the Lender from doing so for a later cause.

7.7.    Upon the occurrence of an Event of Default, if the Lender declares acceleration, Borrower will pay for the Lender's costs of collection including a reasonable attorney's fee.

7.8.    All proceeds received from the sale or other disposition of the Collateral shall, at the sole option of the Lender, be applied as follows: (i) to the expenses of retaking, holding and preparing for sale, selling and the like; (ii) to the attorney's fees and legal expenses incurred by Lender; and (iii) to the satisfaction of the Loan and the other obligations owed to Lender.

7.9.    Except as otherwise expressly provided herein, no remedy herein confirmed or reserved to the Lender is intended to be exclusive of any other available remedy, but each and every remedy shall be cumulative and shall be in addition to every other remedy given under this Agreement or any other Loan Document or now or hereafter existing at law or in equity. No delay or omission to exercise any right or power accruing upon any Event of Default shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power

may be exercised from time to time and as often as deemed expedient by Lender.  In order to entitle the Lender to exercise any remedy reserved to it in this Agreement or any other Loan Document, it shall not be necessary to give notice, other than such notice as may be expressly required by this Agreement or the Loan Documents.

## ARTICLE 8

8.    <u>Miscellaneous</u>.

8.1.    <u>Amendment</u>. This Agreement and the other Loan Documents may be amended or modified at any time and in any form or manner only by a written agreement between the Borrower and the Lender.

8.2.    <u>Loan Documents; Successors and Assigns</u>. All Loan Documents and other agreements shall be deemed to include all amendments and supplements thereto. All Persons shall be deemed to include the successors and assigns thereof. All of the terms and provisions of this Agreement and the other Loan Documents shall be binding upon and shall inure to the benefit of the parties hereto, their respective transferees, legal representatives, heirs, successors and assigns.

8.3.    <u>Waivers</u>. No waiver of any of the provisions of this Agreement or any other Loan Document (i) shall be valid unless evidenced by a writing executed by each party to be bound thereby; (ii) shall be deemed or shall constitute a waiver of any other provision of this Agreement or any other Loan Document or any other provisions hereof or thereof (whether or not similar); or (iii) shall constitute a continuing waiver unless otherwise expressly provided. No delay on the part of the Lender in exercising any right or remedy hereunder or under any other Loan Document shall operate as a waiver thereof nor shall any single or partial exercise of any power or right or remedy preclude other or further exercise thereof or the exercise of any other right or remedy. No notice to or demand on the Borrower shall entitle it to any other or further notice or demand in the same or similar circumstances. ANY AND ALL DISPUTES ARISING OUT OF OR UNDER THE LOAN DOCUMENTS SHALL BE LITIGATED IN THE STATE OF NEW YORK AND DECIDED BY A JUDGE, SITTING WITHOUT A JURY, AND THE UNDERSIGNED BORROWER AND LENDER HEREBY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY ON ANY MATTERS IN DISPUTE AND BORROWER HEREBY WAIVES ANY AND ALL CLAIMS IN THE FUTURE FOR DAMAGES AGAINST THE LENDER, OTHER THAN DIRECT COMPENSATORY DAMAGES.

8.4.    <u>Priority of Advances</u>.  All obligations of Borrower made hereunder by the Lender to Borrower shall constitute and be deemed a cost and expense of Administration in the Chapter 11 proceeding and shall be entitled to priority as provided in the Bankruptcy Code ahead of all other costs and expenses of Administration except as otherwise expressly provided in the DIP orders issued prior to or simultaneously with the execution of this Agreement.

8.5.    <u>Governing Law</u>. This Agreement and all other Loan Documents shall be governed by and construed in accordance with the laws of the State of New York.

8.6.    Survival of Representations, Warranties and Agreements. All representations, warranties and agreements of the Borrower made herein or in any Loan Document shall survive the Closing. Consummation of the transactions contemplated hereby shall not be deemed or construed to be a waiver of any right or remedy possessed by the Lender, notwithstanding that the Lender knew or should have known at the time of closing that such right or remedy existed.

8.6.    Severability. The terms, covenants and conditions of this Agreement shall be deemed to be severable. If one or more of the provisions, terms, covenants or clauses, paragraphs or subparagraphs of this Agreement are adjudged to be unlawful, unconstitutional, unenforceable or void or of no effect for any reason whatsoever, that adjudication shall in no way affect the other provisions, terms, covenants, clauses or paragraphs or subparagraphs of this Agreement which have not been so adjudged. In the event of an adjudication as described, this Agreement shall be construed as though the affected provision, term, covenant or clause, paragraph or subparagraph had not been included in it.

8.7.    Further Assurances. The parties hereto agree that at any time and from time to time after the Closing Date, they will execute, acknowledge and deliver other assurances, financing statements, documents, agreements, and amendments or supplements hereto or to the other Loan Documents and take such other action as may reasonably be required for correcting any errors or omissions in order to carry out the intention of or facilitating the performance of this Agreement or any other Loan Document.

8.8.    Notices. All notices, demands, requests, consents, approvals and other communications required or permitted hereunder must be in writing and will be effective upon receipt. Such notices and other communications may be hand-delivered, sent by first-class certified mail, return receipt requested, or sent by nationally recognized overnight courier service, to the addresses for the Lender and the Borrower (and its counsel) set forth on the first page of this Agreement or to such other address as either may give to the other in writing for such purpose.

8.9.    Payment of Expenses. All reasonable expenses in connection with preparation, issuance, delivery, recording and (if and where needed) filing of this Agreement and any other Loan Documents or notice with respect thereto and the Lender's counsel fees shall be paid at the closing by the Borrower.

8.10.    Security Agreement. It is agreed between all parties hereto that this Agreement constitutes a security agreement within the meaning of the Uniform Commercial Code as enacted and in effect in the State of New Jersey.

8.11.    Borrower shall maintain its sole bank account at Signature Bank. Borrower shall execute any and all documents necessary to designate Salvatore J. Zizza as the sole signatory on such account until the Loan and all Obligations have been paid in full.

4822-3941-2306, v. 1

     8.12.   Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall be one and the same instrument.

     8.13.   Signatures. A scanned PDF signature on this Agreement shall be deemed an original.

     IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, set then-hands the day and year first above written.

PRIMARY CAPITAL PARTNERS LLC     AMBOY GROUP LLC, Debtor in Possession

By: _____     By: _____
    Salvatore Zizza, Managing Member      William Colbert, Managing Member

4822-3941-2306, v. 1

8.12.    Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall be one and the same instrument.

8.13.    Signatures.  A scanned PDF signature on this Agreement shall be deemed an original.

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, set then-hands the day and year first above written.

PRIMARY CAPITAL PARTNERS LLC        AMBOY GROUP LLC, Debtor in Possession

By: _____        By: _____
   Salvatore Zizza, Managing Member           William Colbert, Managing Member

4822-3941-2306, v. 1

UNIFORM FORM CERTIFICATE OF ACKNOWLEDGMENT
(Outside of New York State)

State, District of Columbia, Territory, Possession, or Foreign Country _____ )
ss.:

On the _____ day of October , 2017, before me, the undersigned, personally appeared William Colbert, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the

_____ . (Insert the city or other political subdivision and the state or country or other place the acknowledgment was taken).

_____
Notary Public

STATE OF NEW YORK            )
                             ) ss.:
COUNTY OF  New York          )

        On the 25th day of October, 2017 before me, the undersigned, personally appeared Salvatore Zizza, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

JESSICA LYNN KOONZ
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01KO6348868
Qualified in Nassau County
My Commission Expires Oct 11, 2020

- 10 -

## GRID PROMISSORY INSTALLMENT NOTE

$500,000                                                    October 25, 2017

### A.    TERMS OF LOANS

**FOR VALUE RECEIVED**, AMBOY GROUP LLC, Debtor in Possession, a New

Jersey limited liability company ("Borrower"), with offices at 1 Amboy Avenue, Woodbridge,

New Jersey 07095, promises to pay to the order of PRIMARY CAPTIAL PARTNERS LLC, a

New York limited liability company (the "LENDER"), at its offices at 641 Lexington Avenue,

17th Floor, New York, New York 10022, or at such other place as the Lender may designate in

writing, the principal sum of (A) FIVE HUNDRED THOUSAND DOLLARS ($500,000), or, if

less, (B) the aggregate unpaid principal amount of loans (the "LOANS") made to Borrower and

outstanding hereunder, as conclusively evidenced on the grid attached hereto as Schedule I.

1.    **INTEREST; PREPAYMENT.**  (a) Borrower will pay interest on the unpaid

principal amount hereof, computed on the basis of the actual number of days elapsed in a 360-

day year, at a rate equal to twelve percent (12%) per annum. (b) Borrower will pay interest, at

the rate described above, on demand, and if no demand is made, monthly on the first day of each

month, commencing November 1, 2017, and at maturity (whether by acceleration or otherwise).

In no event shall interest exceed the maximum legal rate permitted by law. All payments,

including insufficient payments, shall be credited, regardless of their designation by Borrower,

first to collection expenses due hereunder, then to outstanding late charges, then to interest due

and payable but not yet paid, and the remainder, if any, to principal. All payments by Borrower

or any endorser of this Note on account of principal, interest or fees hereunder shall be made in

lawful money of the United States of America, in immediately available funds. (c) The Loans

may be prepaid by the Borrower, in whole or in part, at any time without penalty or premium.

2.        **ADVANCES; SCHEDULE I.**   The Loans in the aggregate shall not exceed five

hundred thousand dollars ($500,000). The Lender will advance the principal amount of each

Loan to the Borrower within two Business Days after receipt from the Borrower of a request

therefor specifying the amount of the Loan requested, which requests may be made by the

Borrower at any time prior to the date on which the Lender has made demand for repayment of

the Loans in accordance with Section 3 hereof. The Lender is hereby authorized by Borrower to

enter and record on Schedule I attached hereto the amount of each Loan made under this Note

and each payment of principal thereon without any further authorization on the part of Borrower

or any endorser or guarantor of this Note. To the extent interest is not paid when due, the Lender

is authorized and directed to enter the amount of such interest as a Loan on Schedule I. The entry

of a Loan on said schedule shall be prima facie and presumptive evidence of the entered Loan

and its conditions. The Lender's failure to make an entry, however, shall not limit or otherwise

affect the obligations of Borrower or any endorser or guarantor of this Note.

3.        **LOANS REPAYABLE MONTHLY.**   (a) On November 1, 2017, and on the 1st

day of each succeeding month, Borrower shall pay the Lender an interest payment based on the

then outstanding principal balance of the Loan, computed from the date of each advance.

(b)        The entire principal balance of the Loan, together with all accrued interest, shall

be due and payable on October 31, 2018.

(c)        Notwithstanding any terms in this Note to the contrary, the enumeration in this

Note of specific obligations of Borrower to the Lender and/or conditions to the availability of

funds under this Note shall not be construed to qualify, define, or otherwise limit the Lender's

right, power, or ability, at any time, under applicable law, to demand the payment of all Loans outstanding under this Note upon the occurrence of an Event of Default.

      4.      **COLLATERAL.** This Note is secured by the collateral described in documents executed simultaneously herewith.

      5.      **USE OF PROCEEDS.** Borrower will not, directly or indirectly, use any proceeds of Loans hereunder for the purpose of purchasing or carrying any margin stock within the meaning of Regulation U of the Board of Governors of the Federal Reserve System or to extend credit to any person for the purpose of purchasing or carrying any such margin stock, or for any purpose which violates, or is inconsistent with, any of Regulations T, U or X of such Board of Governors.

      B.      **REPRESENTATIONS AND WARRANTIES**

      6.      Borrower represents and warrants to the Lender that: (a) Borrower is a limited liability company duly formed, validly existing, and in good standing under the laws of New Jersey, and has the power and authority to own its assets and to transact the business in which it is now engaged or proposes to be engaged.

      (b)      Borrower has full power and authority to execute and deliver this Note and to incur the obligations provided for herein, all of which have been duly authorized by all proper and necessary company action. No consent or approval of members or of any governmental or administrative authority, instrumentality, or agency is required as a condition to the validity of the Note.

      (c)      The Note is legal, valid, and contains binding obligations of Borrower enforceable against Borrower in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, moratorium or other similar laws relating to creditors' rights generally

and except that the availability of equitable remedies, including specific performance, is subject to the discretion of the court before which any proceeding therefor may be brought.

(d)     Borrower is in default in the performance, observance or fulfillment of the obligations, covenants, or conditions contained in the agreement or instrument to which it is a party with Valley National Bank and Newtek Business Finance, Inc.

(e)     There is no pending or threatened action or proceeding against or affecting Borrower before any court, governmental agency, or arbitrator which is reasonably likely to, in any one case or in the aggregate, materially and adversely affect the ability of Borrower to perform its obligations under this Note.

C.     **EVENTS OF DEFAULT**

7.     If any of the following events shall occur and be continuing:

(a)     Borrower shall fail to make any payment of (i) principal, or (ii) interest on this Note or any fee provided for herein on demand as demand is permitted hereunder;

(b)     Borrower shall default in the performance or observance of any covenant or agreement contained herein or in any of the Loan Documents following five days' written notice thereof;

(c)     any representation or warranty made by or on behalf of Borrower in this Note, shall at any time prove to have been incorrect when made in any material respect;

(d)     any judgment against Borrower or any attachment, levy or execution against any of its properties for any material amount shall remain unpaid, or shall not be released, discharged, dismissed, stayed or fully bonded for a period of sixty (60) days or more after its entry, issue or levy, as the case may be;

(e)    Borrower shall make an assignment for the benefit of creditors, or a trustee, receiver or liquidator shall be appointed for Borrower or for any of its property; or (each of the foregoing to constitute an "EVENT OF DEFAULT") then, and in any such event, the Lender may declare the entire unpaid principal amount of this Note and all interest and fees accrued and unpaid hereon to be immediately due and payable, whereupon the same shall become and be forthwith due and payable, without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived by Borrower.

    **D.**    **MISCELLANEOUS**

8.    **GOVERNING LAW.** This Note shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to its rules on conflicts of laws.

9.    **NOTICES, ETC.** All notices and other communications provided for under this Note shall be in writing (including telegraphic, telex, and facsimile transmissions) and mailed or transmitted or delivered, if to Borrower, at Borrower's address indicated in the Lender's records as of the date of such notice, and if to the Lender, at its address at 641 Lexington Avenue, 17th Floor, New York, New York 10022, or, as to each party, at such other address as shall be designated by such party in a written notice to the other party complying as to delivery with the terms of this paragraph. Except as otherwise provided in this Note, all such notices and communications shall be effective either on receipt if delivered by hand, or three (3) Business Days following deposit, postage fully paid, in the mails by certified mail.

10.    **NO WAIVER.** No failure or delay on the part of the Lender in exercising any right, power, or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any such right, power, or remedy preclude any other or further exercise

thereof or the exercise of any other right, power, or remedy hereunder. The rights and remedies provided herein are cumulative, and are not exclusive of any other rights, powers, privileges, or remedies, now or hereafter existing, at law or in equity or otherwise.

11.      **COSTS AND EXPENSES.** Borrower shall reimburse the Lender for all costs and expenses incurred by the Lender and shall pay the reasonable fees and disbursements of counsel to the Lender in connection with enforcement of the Lender's rights hereunder. Borrower shall also pay any and all taxes (other than taxes on or measured by net income of the holder of this Note) incurred or payable in connection with the execution and delivery of this Note.

12.      **AMENDMENTS.** No amendment, modification, or waiver of any provision of this Note nor consent to any departure by Borrower therefrom shall be effective unless the same shall be in writing and signed by the Lender and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

13.      **SUCCESSORS AND ASSIGNS.** This Note shall be binding upon Borrower and its heirs, legal representatives, successors and permitted assigns and the terms hereof shall inure to the benefit of the Lender and its successors and permitted assigns, including subsequent holders hereof. Notwithstanding the foregoing, neither party shall assign its rights or obligations under 5this Note without the consent of the other party.

14.      **SEVERABILITY.** The provisions of this Note are severable, and if any provision shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall not in any manner affect such provision in any other jurisdiction or any other provision of this Note in any jurisdiction.

15.    **ENTIRE AGREEMENT.** This Note sets forth the entire agreement of Borrower and the Lender with respect to this Note and may be modified only by a written instrument executed by Borrower and the Lender.

16.    **HEADINGS.** The headings herein are for convenience only and shall not limit or define the meaning of the provisions of this Note.

17.    **JURISDICTION; SERVICE OF PROCESS.** Borrower agrees that in any action or proceeding brought on or in connection with this Note (i) either the United States District Court for the Southern District of New York, or the Supreme Court of the State of New York, County of New York, shall have jurisdiction of any such action or proceeding, (ii) service of any summons and complaint or other process in any such action or proceeding may be made by the Lender upon Borrower by registered or certified mail directed to Borrower at its address referenced above, Borrower hereby waiving personal service thereof, and (iii) within thirty (30) days after such mailing Borrower shall appear or answer to any summons and complaint or other process, and should Borrower fail to appear to answer within said thirty (30) day period, it shall be deemed in default and judgment may be entered by the Lender against Borrower for the amount as demanded in any summons or complaint or other process so served.

18.    **WAIVER OF THE RIGHT TO TRIAL BY JURY.** BORROWER HEREBY IRREVOCABLY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM, OR COUNTERCLAIM, WHETHER IN CONTRACT OR TORT, AT LAW OR IN EQUITY, IN ANY MANNER CONNECTED WITH THIS NOTE OR ANY TRANSACTIONS HEREUNDER.

IN WITNESS WHEREOF, Borrower has caused this Note to be executed and delivered as of the day and year and at the place first above written.

AMBOY GROUP LLC, Debtor in Possession

By: _____

William Colbert, Managing Member

UNIFORM FORM CERTIFICATE OF ACKNOWLEDGMENT
(Outside of New York State)

State, District of Columbia, Territory, Possession, or Foreign Country
_____ ) ss.:

On the _____ day of October, 2017, before me, the undersigned, personally appeared William
Colbert, personally known to me or proved to me on the basis of satisfactory evidence to be the
individual whose name is subscribed to the within instrument and acknowledged to me that he
executed the same in his capacity, that by his signature on the instrument, the individual, or the
person upon behalf of which the individual acted, executed the instrument, and that such
individual made such appearance before the undersigned in the
___Middlesex County, New Jersey___ . (Insert the city or other
political subdivision and the state or country or other place the acknowledgment was taken).

FRANK L. RAMOS
NOTARY PUBLIC OF NEW JERSEY
Comm. # 50021644
My Commission Expires 8/19/2020

_____
Notary Public

- 8 -

## SCHEDULE I TO NOTE

| Date | Amount of Loan | Amount of Principal Repaid | Unpaid Principal | Balance of Note | Name of Person making Notation |
|------|----------------|----------------------------|------------------|-----------------|--------------------------------|
|      |                |                            |                  |                 |                                |
|      |                |                            |                  |                 |                                |
|      |                |                            |                  |                 |                                |
|      |                |                            |                  |                 |                                |
|      |                |                            |                  |                 |                                |
|      |                |                            |                  |                 |                                |
|      |                |                            |                  |                 |                                |
|      |                |                            |                  |                 |                                |
|      |                |                            |                  |                 |                                |
|      |                |                            |                  |                 |                                |
|      |                |                            |                  |                 |                                |

4825-7836-4498, v. 1