| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>**TRENK, DiPASQUALE,**<br>**DELLA FERA & SODONO, P.C.**<br>347 Mt. Pleasant Avenue, Suite 300<br>West Orange, NJ 07052<br>(973) 243-8600<br>Anthony Sodono, III<br>Sari B. Placona<br>*Counsel to Amboy Group, LLC, et. al.,*<br>*Chapter 11 Debtors and Debtors-in-Possession* | **Order Filed on November 2, 2017**<br>**by Clerk**<br>**U.S. Bankruptcy Court**<br>**District of New Jersey** |
| In re:<br><br>AMBOY GROUP, LLC *et al.*,[1]<br><br>                     Debtor. | Case No.: 17-31653<br>(Joint Administration)<br><br>Judge: Christine M. Gravelle<br><br>Chapter: 11 |

**INTERIM ORDER AUTHORIZING DEBTOR TO: (A) OBTAIN SENIOR SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364(d)(1) (B) UTILIZE CASH COLLATERAL PURSUANT TO U.S.C. §§ 105, 361, 362, AND 363; (C) GRANT ADEQUATE PROTECTION TO PRE-PETITION SECURED LENDER PURSUANT TO 11 U.S.C. 105, 362 AND 363; (D) SCHEDULE FINAL HEARING PURSUANT TO RULES 4001(b), 4001(c) AND 9014; USE OF CASH COLLATERAL**

The relief set forth on the following pages, numbered two (2) through twelve (12), is hereby

**ORDERED**.

**DATED: November 2, 2017**

*Honorable Christine M. Gravelle*
*United States Bankruptcy Judge*

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are (i) Amboy Group, LLC (8971) and (ii) CLU Amboy, LLC (5726).

**THIS MATTER** is before the Court on motion of Amboy Group, LLC ("Amboy"), and CLU Amboy, LLC ("CLU"), Chapter 11 debtors and debtors-in-possession (collectively, the "Debtors"), (a) to obtain senior secured post-petition financing (the "DIP Financing") pursuant to the terms of that certain Debtor-in-Possession Loan and Security Agreement and Grid Promissory Installment Note (the "DIP Financing Documents") to be entered into by and between the Debtor and Primary Capital Partners ("Primary Capital" or the "Lender"), (b) to utilize cash collateral, as defined in Section 363(a) of the Bankruptcy Code, (the "Cash Collateral") of its prepetition lender, Newtek Small Business Finance, LLC. ("Newtek," or "Prepetition Lender"), (c) granting certain adequate protection to such Prepetition Lender; and (d) scheduling the final hearing with respect to the relief requested herein (the "Cash Collateral Motion" or "Motion").

Notice of the Motion together with notice of the preliminary hearing thereon has been given and served by the Debtor pursuant to Bankruptcy Rule 4001(b)(1) and (3) to (i) the Office of the United States Trustee for the District of New Jersey; (ii) the Debtors' twenty largest unsecured creditors; (iii) secured creditor Valley National Bank ("VNB") and Newtek; (iv) those parties who filed a notice of appearance and request for service of pleadings in this Chapter 11 Case pursuant to Bankruptcy Rule 2002, if any; and (v) any other parties claiming an interest in the cash collateral, if any. The Court considered the motion, the oral objections made by the Acting US Trustee, VNB and Newtek, and after due deliberation and good and sufficient cause appearing for the entry of the within order; it is hereby found.

A.    **Notice and Hearing**. Notice of motion and order shortening time pursuant to D.N.J. LBR 9013-1(e) and Federal Rule of Bankruptcy Procedure 9006(c) for the preliminary hearing on the Debtors' use of cash collateral has been served in accordance with Section 102(1) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b), [or if by Consent,

under Federal Rule of Bankruptcy Procedure 4001(d)] which notice is appropriate in the particular circumstances and sufficient for all purposes under the Bankruptcy Code and the applicable Bankruptcy Rules in respect to the relief requested.

B. **Chapter 11 Filed.** Debtors filed their petitions under Chapter 11 of the Bankruptcy Code on October 25, 2017 (the "Petition Date"), and are presently operating as debtors-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code.

C. **Pre-Petition Debt.** CLU Amboy and VNB entered into a Promissory Note ("Note') (as defined therein) dated December 27, 2013, whereby VNB advanced CLU the sum of $6,500,000. The Note was a twenty-five (25) year adjustable note secured by a Mortgage and Security Agreement ("Agreement"). The Agreement granted VNB a first mortgage in favor of Security Creditor on real property located at 1 Amboy Avenue, Township of Woodbridge, Middlesex County, New Jersey (the "Property"). As of the Petition Date, VNB is owed approximately $7.1 million on its first mortgage on the Property.

On December 27, 2013, the Debtors and Newtek Small Business Finance, Inc. ("Newtek") entered into that certain Promissory Note, Loan Agreement, Mortgage and Security Agreement, and General Security Agreement (the "Loan Documents") in connection with an adjustable rate term loan in the original principal amount of $2,625,000.00 (the "First Newtek Term Loan "). Pursuant to the First Newtek Term Loan Documents, the maturity date on the First Newtek Term Loan is December 27, 2023.

The First Newtek Term Loan is secured by a second mortgage ("Second Mortgage"), subject only to VNB's First Mortgage on the Property, together with improvements, and assignment of rent. The First Newtek Term loan is further secured by individual guarantees by each of CLU Amboy's three members (the "Newtek Member Guarantors"), as well as a first

3

perfected security interest on substantially all of Debtors' accounts receivable and personal property (the "Personal Property") and, with the Second Mortgage and Newtek Member Guarantors (the "First Newtek Loan Collateral").

As of August 29, 2017, Newtek asserts that approximately $1,947,067.47 remains due and owing on the First Newtek Term Loan.

Newtek's Collateral includes its liens on cash collateral (the "Cash Collateral") that the Debtors receive from various respective sources.

On June 3, 2015, the Debtor and Newtek entered into that certain Loan Agreement in connection with an adjustable rate installment loan in the original principal amount of $1,816,00.00 (the "Second Newtek Term Loan"). Pursuant to the Second Newtek Term Loan Agreement, the loan was to be paid out in one (1) monthly installment of interest only and 119 equal consecutive monthly installments of principal and interest.

The Second Newtek Term Loan is secured by, among other things, a third mortgage on the Property (the "Third Mortgage"), as well as a subordinated priority interest on all of the Debtors' business assets (the "Business Assets") as defined in the General Security Agreement (the "Second Newtek Loan Collateral").

The Property is valued at $13,000,000. Newtek holds a second and third mortgage on the Property and is owed approximately $3.5 million. Newtek enjoys a $2.3 million equity cushion on the Property after considering VNB's $7.1 million first mortgage. Moreover, Newtek is further protected by its first and second mortgages on the Usak Property, its various guarantees, and any security it would have in the DIP Collateral after Primary Capital's superpriority lien.

In order to adequately protect Newtek, the Debtors offer to make a monthly interest only payment directly to Newtek in the amount of $14,583.33.

4

D.      **Pre-Petition Collateral.**  Newtek has made a prima facie showing that it has a properly perfected lien on the Amboy Group's personal property assets (including proceeds and accounts receivable) at the commencement of the case, including the Debtors' accounts, inventory and other collateral, which is or may result in cash collateral.

E.      **Cash Collateral.**  "Cash Collateral" as defined by Section 363(a) of the Bankruptcy Code includes post-petition proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in Section 552(b) and as the term "proceeds" is described in UCC Section 9-306.

F.      **Necessity and Best Interest.**  The Debtors do not have sufficient unencumbered cash or other assets with which to continue to operate its business in Chapter 11.  The Debtor requires immediate authority to use cash collateral as defined herein in order to continue its business operations without interruption toward the objective of formulating an effective plan of reorganization, or liquidation through the sale of its business.  Debtors' use of cash collateral and on the terms and conditions set forth herein is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.  The amount of cash collateral authorized to be used pending a final hearing or entry of a final order is not to exceed the amounts reflected in the Debtor's budget with a ten (10%) percent variance, annexed as **Exhibit A,** which projects revenues and expenses for the thirty (30) day period following the filing of the Debtor's petition for relief (the "<u>Cash Collateral Budget</u>").

G.      **Purposes.**  The Debtors are authorized to use cash collateral to meet the ordinary cash needs of the Debtors for the payment of actual expenses of the Debtors necessary to:  (a) maintain and preserve its assets, (b) continue operation of its business, including paying payroll

5

and payroll taxes, and insurance expenses, (c) other expenses reflected in the cash collateral budget, and (d) statutory fees pursuant to 28 U.S.C. § 1930(a)(6).

  H. **Post-Petition Financing**.  The Debtors are authorized to obtain post-petition financing from Primary Capital Partners ("Primary Capital" or "DIP Lender") as follows:

- Debtors and Primary Capital shall enter into a Loan and Security Agreement and Grid Promissory Note;

- Primary Capital to provide Amboy with a post-petition credit in the principal amount up to $500,000.00 (the "DIP Financing"); For purposes of this Interim Order, the Debtor shall only be allowed to use the DIP Financing up to the amounts set forth in the attached Budget.

- Any amount of the DIP Financing disbursed to Amboy Group shall accrue annual interest at the rate of 12 percent, and Amboy Group shall, on the first day of each month, repay Primary Capital an interest only payment based on the then-outstanding principal balance of the DIP Financing, computed from the date of each disbursement.  The principal balance shall be reduced as funds are available so as to reduce the amount of interest paid.  The entire principal balance of the DIP Financing, together with interest, shall be due and payable no later than October 31, 2018;

- Subject to the United States Trustee's fees as a super-priority lien under under 28 U.S.C. § 1930(a)(6), Primary Capital shall be entitled to a "priming" lien under Section 364(d) as to accounts receivables only, thereby acquiring a first lien position on Amboy Group's accounts receivables ahead of Newtek.

The Court having determined there is a reasonable likelihood that the Debtors will prevail upon the merits at the final hearing of the Motion, and for good cause shown, it is

**ORDERED** as follows:

1. <u>Use of Cash Collateral</u>.  The Debtors are authorized, for the periods and in accordance with the Cash Collateral Budget attached as **Exhibit A,** to use cash collateral (with a ten percent (10%) variance) for the following purposes:

    a. maintenance and preservation of its assets;

    b. payment of any and all quarterly fees owed to the Office of the United States Trustee;

    c. the continued operation of its business, including but not limited to, paying payroll, payroll taxes, employee expenses, and insurance costs;

    d. the completion of work-in-process;

    e. the purchase of replacement inventory and equipment;

    f. to make adequate protection payments to the Secured Creditors; and

    g. other items set forth in the Cash Collateral Budget.

Provided, however, if a revolving loan, the Debtors' authorization to use cash collateral shall remain subject to the borrowing ratios set forth in the pre-petition loan agreements between the Debtor and Newtek, unless otherwise agreed in writing by Newtek or until further Order of the Court.  Any use of Cash Collateral at more than a ten percent (10%) variance with the Cash Collateral Budget must be specifically approved in writing by Newtek.  The Debtors may make application to the Court, on short notice, for use of Cash Collateral at variance with the Cash Collateral Budget if not approved by Newtek.

2. <u>Adequate Protection</u>**.**  As adequate protection for use of cash collateral, Newtek is GRANTED:

  a. <u>Replacement Lien</u>.  Nunc pro tunc to the Petition Date, a replacement perfected security interest under Section 361(2) of the Bankruptcy Code to the extent that the Secured Creditor's cash collateral is used by the Debtor, to the extent and with the same priority in the Debtors' post-petition collateral, and proceeds thereof, that the Secured Creditor held in the Debtors' pre-petition collateral subject to statutory fees pursuant to 28 U.S.C. § 1930(a)(6).

  b. <u>Statutory Rights Under Section 507(b)</u>.  If adequate protection provided for hereby proves insufficient to protect Newtek's interest in and to the cash collateral, Newtek shall have a superpriority administrative expense claim, pursuant to Section 507(b) of the Bankruptcy Code, senior to any and all claims against the Debtor under Section 507(a) of the Bankruptcy Code, whether in this proceeding or in any superseding proceeding subject to statutory fees pursuant to 28 U.S.C. § 1930(a)(6) and does not include any Chapter 5 claims.  The superpriority lien granted to Primary Capital is subject to statutory fees pursuant to 28 U.S.C. § 1930(a)(6).

  c. <u>Periodic Payments</u>.  On or before December 1, 2017, Debtors shall pay Newtek an interest only monthly payment in the amount of $14,583.33.  Newtek is directed to cease, and is otherwise prohibited from sweeping the Debtors' bank accounts until there is a further Order of this Court.  Primary Capital (defined herein) shall be paid a monthly interest only payment of twelve percent (12%) on any amount borrowed under the DIP Financing.  The principal balance shall be reduced as funds are available so as to reduce the amount of interest paid.

  d. <u>Deemed Perfected</u>.  The replacement lien and security interest granted herein are automatically deemed perfected upon entry of this Order without the necessity of Newtek taking possession, filing financing statements, mortgages or other documents.  Although not required, upon request by Newtek, Debtors shall execute and deliver to Newtek any and all UCC Financing Statements, UCC Continuation Statements, Certificates of Title, or other instruments or documents considered by Newtek to be necessary in order to perfect the security interests and liens in Debtors' post-petition collateral and proceeds granted by this Order, and Newtek is authorized to receive, file and record the foregoing at Newtek's own expense, which actions shall not be deemed a violation of the automatic stay.

  e. <u>Periodic Accountings</u>.  Within fourteen (14) days of the entry of this Order, but not less than three (3) business days from the scheduled final hearing on the use of cash collateral, Debtors shall provide an accounting to Newtek setting forth the cash receipts and disbursements made by Debtors under this Order.  In addition, the Debtors shall provide Newtek all other reports required by the Loan Documents and any other reports reasonably required by Newtek as well as copies of the Debtors' monthly United States Trustee operating reports. Upon appointment of a Creditors' Committee, if any, the Debtors shall submit a copy of the monthly United States Trustee operating reports to counsel to said Committee if counsel has been appointed, and until counsel is retained, to the Chairman of said Committee.

   f. <u>Default Hearing</u>.  If Debtors default or violates this Order, Newtek is entitled to request a hearing within fourteen (14) days (or if immediate and irreparable injury, loss, or damage may occur, an emergency hearing within 48 hours).  Pursuant to Paragraph 7.4 of the Loan and Security Agreement, three (3) days written notice of an event of default should also be given to the US Trustee, the Committee and if no Committee, the top 20 unsecured creditors.

  3. <u>Creditor's Rights of Inspection and Audit</u>.  Upon reasonable notice by Newtek, the Debtors shall permit such creditor, and any of its agents, reasonable and free access to the Debtors' records and place of business during normal business hours to verify the existence, condition and location of collateral in which said creditor holds a security interest and to audit the Debtors' cash receipts and disbursements.

  4. <u>Interlocutory Order and No Modification of Secured Creditors' Adequate Protection</u>.  This is an interlocutory order.  Nothing contained herein shall be deemed or construed to (a) limit Newtek to the relief granted herein; (b) bar Newtek from seeking other and further relief (including without limitation relief from the terms of this Order) for cause shown on appropriate notice to the Debtors and other parties-in-interest entitled to notice of same; or (c) require the Secured Creditor to make any further loans or advances to the Debtor.  The Order may be modified for cause shown by the Debtors, Newtek, or any other party-in-interest on due notice.  No such modification, however, shall deprive Newtek of its interest in the Debtors' property (pre-petition and post-petition).

  5. <u>Post-Petition Financing</u>.  Debtors have an immediate need to obtain the DIP Financing.  The DIP Financing will be used to preserve, maintain and enhance the going-concern value of the Debtors' operations and assist in the reorganization and confirmation of the plan.  Finally, the funds will be used to formulate the Debtors ultimate exit strategy from this bankruptcy proceeding.  The Debtors are authorized to obtain post-petition financing from Primary Capital up to $500,000 in accordance with the Grid Promissory Installment Note and Loan and Security

9

Agreement. For purposes of this Interim Order, the Debtor shall only be allowed to use the DIP Financing up to the amounts set forth in the attached Budget. Any advances by Primary Capital shall enjoy a first priority lien on Amboy Group's accounts receivable (the "Accounts Receivable Collateral"). Such priority lien on the Accounts Receivable Collateral specifically "primes" Newtek's first lien position on the Accounts Receivable Collateral.

6. Application Granted. The Application is granted as provided herein. Any objections to the Application and entry of the Interim Order that have not been previously withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

7. Approval of Documents. The terms set forth herein are hereby approved subject to the terms of this Interim Order and the Final Order. The failure to reference or discuss any particular provision of the DIP Financing Documentation shall not affect the validity or enforceability of any such provision.

8. Authorization to Execute and Deliver Documents. Debtors are expressly authorized, empowered, and directed to do and perform all acts to make, execute, deliver, and implement the DIP Financing Documentation and any other document of any kind required to be executed and delivered in connection therewith. Debtors are authorized and directed to tender all payments that may be required or necessary to perform all of its obligations under this Interim Order and the DIP Financing Documentation without any further order or approval of the Court.

9. Authorization to Borrow; the Budget. Good and sufficient cause has been shown for the entry of this Interim Order. Debtors are authorized and empowered to borrow funds from Primary Capital, DIP Lender subject to the attached Budget.

10.  Amendments.  The DIP Lender and Debtors may amend, modify, supplement, or waive any provision of the DIP Financing Documentation if such amendment, modification, supplement or waiver is not material (in the good faith judgment of the DIP Lender and Debtors), without any need to apply to, or receive further approval from, the Court.  Any material amendment, modification, supplement, or waiver shall be in writing, signed by the parties, and approved by the Court on appropriate notice, including to the Committee, if any.

11.  Collateral Security.  As security for the DIP Loan, the Lender is hereby granted pursuant to section 364(c)(2), (3) and (d) of the Bankruptcy Code, a first priority lien on Amboy Group's Accounts Receivable Collateral.  Such priority lien specifically "primes" Newtek's first lien position on Amboy Group's Accounts Receivable Collateral subject to paragraph 2b.

12.  No Subordination.  The lien on, and security interest in, the Property granted to the DIP Lender under this Interim Order shall not be subordinated to, or made *pari passu* with, any other lien or security interest subject to paragraph 2b

13.  Termination.  Notwithstanding the provisions of section 362 of the Bankruptcy Code and on further order of or application or Application to the Court, if Debtors fail to perform any of its material obligations under the Interim Order (a "Termination Event"), and at all times during the continuance thereof, the Lender may, upon not less than ten (10) business days' prior written notice to the Debtor and its counsel, the Office of the United States Trustee, and counsel for the Committee, exercise any and all rights and remedies allowed under DIP Financing Documentation and applicable law.

14.  Binding Effect of Interim Order; Successors and Assigns.  The DIP Financing Documentation and the provisions of this Interim Order subject to a Final Order shall be binding upon all parties-in-interests in the Case including, without limitation, the DIP Lender, the Debtor

and their respective successors and assigns including, without limitation, any chapter 11 trustee or chapter 7 trustee or similar responsible person hereafter appointed as a representative of the Debtors' estate and any such successors or assigns, without further order of this Court and shall inure to the benefit of the DIP Lender and the Debtors and their respective successors and assigns. The Debtors and its successors and assigns shall be deemed authorized and directed to comply with the provisions of the DIP Financing Documentation.

15. <u>Payments Free and Clear</u>.  Any and all payments or proceeds remitted to the DIP Lender pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b) of the Bankruptcy Code.

16. <u>Inconsistency</u>.  If any irreconcilable inconsistency between this Interim Order and the DIP Financing Documentation or any other agreement heretofore or hereafter entered into by and between the Debtors and the Lender, the terms of this Interim Order shall govern and control. If any provision not in this Interim Order that is required to be so pursuant to the DIP Financing Documentation, such provisions are hereby deemed incorporated in this Interim Order.

17. <u>Retention of Jurisdiction</u>.  The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

18. <u>Immediate Docketing of Interim Order</u>. The Clerk of the Court is hereby directed to forthwith enter this Interim Order on the docket of this Court maintained in regard to the Debtor's Case.

19. <u>Effectiveness</u>. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

20. <u>Headings</u>. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

21. <u>Final Hearing.</u> A final hearing on or before November 16, 2017, to consider the Application is scheduled at 10:00 a.m. Any objections to the Final Order must be filed with the Clerk of the Bankruptcy Court and served upon counsel to the Debtor, the United States Trustee, and the Lender on or before November 13, 2017, at 4:00 p.m. If no objections are filed, appearances are not required.

**FINAL HEARING ORDER**

**IT IS FURTHER ORDERED AND NOTICE IS HEREBY GIVEN** that any creditor or other interested party having any objection to this Interim Order shall file with the Clerk of this Court and served upon counsel for the Debtors on or before the November 13, 2017, a written objection and shall appear to advocate said objection at a Final Hearing to be held before the Honorable Christine M. Gravelle United States Bankruptcy Judge, at on the November 16, 2017, at 10:00 a.m. in Courtroom #3 of the United States Bankruptcy Court, 402 East State Street, Trenton, New

Jersey. In the event no objections are filed or not advocated at such hearing, then this Order shall continue in full force and effect and shall be deemed a Final Order without further notice or hearing in accordance with Federal Rules of Bankruptcy Procedure 4001(d)(3).

## NOTICE ORDER

**IT IS FURTHER ORDERED** that the Debtors serve a copy of this Order and Notice by first class mail within one (1) business day from the date hereof, on (i) the Office of the United States Trustee for the District of New Jersey; (ii) the District Director of the Internal Revenue Service; (iii) the New Jersey Division of Taxation; (iv) all known secured creditors; (v) counsel to any committee appointed under Section 1102 of the Bankruptcy Code, if one has been appointed and if not, the Debtor's twenty (20) largest Rule 1007(d) unsecured creditors, and counsel to VNB. Debtors shall immediately file with the Clerk a Certificate of Service of said mailing.

# **EXHIBIT A**

4818-9346-7475, v. 1

**Amboy Group, LLC**
**4 Week Cash Flow Statement**
($ in USD)

| Week Number | 2 | 3 | 4 | 5 |
|---|---|---|---|---|
| Week Ending | 4-Nov | 11-Nov | 18-Nov | 25-Nov |
| **Initial Cash Balance - 10/31 (DIP)** | 9,461 | (127,792) | (140,777) | 42,245 |
| Prior (Payment)/Draw on Revolver | – | 130,000 | 140,777 | (42,245) |
| **Adjusted Cash Balance** | 9,461 | 2,208 | - | - |
| **Sources from Operations** | | | | |
| Amboy Group | 79,242 | 116,125 | 114,821 | 154,930 |
| Central Foods | - | 11,407 | 145,645 | 130,615 |
| Parmacotto-Amboy | 39,600 | 27,500 | 55,000 | 27,500 |
| CLU Amboy, LLC | 15,888 | 22,900 | 18,901 | 16,000 |
| Loblaw's | - | - | - | - |
| JW Fine Foods | 3,000 | 3,000 | 3,000 | 3,500 |
| Westside Foods | - | 2,500 | 2,500 | 2,500 |
| Pret a Manger | - | - | - | - |
| My Ollie | - | - | - | - |
| **Total Sources from Operations** | 137,730 | 183,433 | 339,867 | 335,046 |
| **Disbursements for Operations** | | | | |
| Operating Leases | 594 | 80 | 80 | 1,600 |
| Payroll Combined | 40,195 | 45,651 | 50,890 | 53,512 |
| Purchases - COGS | 187,751 | 210,020 | 187,463 | 143,835 |
| Utilities | - | 38,313 | - | - |
| Trucking | 8,319 | 10,054 | 11,887 | 12,770 |
| Other SG&A | 14,500 | 14,000 | 14,000 | 14,000 |
| **Total Disbursements for Operations** | 251,358 | 318,117 | 264,321 | 225,717 |
| **Disbursements for Non-operations** | | | | |
| Repairs and Maintenance | 5,000 | 5,000 | 5,000 | 5,000 |
| Insurances* | 1,437 | 3,300 | 3,300 | 9,800 |
| RE Taxes | - | - | 25,000 | - |
| Newtek Payments** | - | - | - | - |
| VNB Payments | - | - | - | - |
| DIP Payments | - | - | - | 1,822 |
| **Total Disbursements for Non-operations** | 6,437 | 8,300 | 33,300 | 16,622 |
| **Disbursements for Bankruptcy** | | | | |
| Professional Fees - Accounting | 17,188 | - | - | - |
| Utility Security Deposit | - | - | - | - |
| Creditors Committee Counsel | - | - | - | - |
| Debtor's Special Counsel | - | - | - | - |
| Bankruptcy Counsel | - | - | - | - |
| Rental | - | - | - | - |
| **Total Disbursements for Bankruptcy** | 17,188 | - | - | - |
| **Ending Cash Balance** | (127,792) | (140,777) | 42,245 | 92,706 |
| (Payment)/Draw on Revolver | 130,000 | 140,777 | (42,245) | (92,706) |
| **Ending Adjusted Cash Balance** | 2,208 | - | - | - |

| Cash Flow Summary | 4-Nov | 11-Nov | 18-Nov | 25-Nov |
|---|---|---|---|---|
| BB Cash (DIP) | 9,461 | (127,792) | (140,777) | 42,245 |
| Prior (Payment)/Draw on Revolver | - | 130,000 | 140,777 | (42,245) |
| Cash Inflows | 137,730 | 183,433 | 339,867 | 335,046 |
| Cash Outflows | 274,983 | 326,417 | 297,621 | 242,339 |
| EB Cash | (127,792) | (140,777) | 42,245 | 92,706 |
| (Payment)/Draw on Revolver | 130,000 | 140,777 | (42,245) | (92,706) |
| EB Adjusted Cash | 2,208 | - | - | - |
| *Change in Adjusted Cash* | | (2,208) | | |
| *Cumulative Change in Adjusted Cash* | | (2,208) | (2,208) | (2,208) |

| Revolver Summary | 4-Nov | 11-Nov | 18-Nov | 25-Nov |
|---|---|---|---|---|
| BB Revolver | 500,000 | 370,000 | 229,223 | 271,468 |
| (Payment)/Draw on Revolver | 130,000 | 140,777 | (42,245) | (92,706) |
| EB Revolver | 370,000 | 229,223 | 271,468 | 364,175 |
| *Cumulative Draw* | (130,000) | (270,777) | (228,532) | (135,825) |

Cost for insurance above includes the cost of all required policies.  (Workers compensation
* insurance, property, general liability, crime and fidelity, inland marine, auto, and commercial liability umbrella policies)
As per court order, payments to Newtek Small Business Finance will begin after December 1, 2017
** at 14,583.33 per month.

| Cash Collateral Summary | 11/25/2017 |  |
|---|---|---|
| Cash in bank | - | |
| Available balance on DIP LOC | 364,175 | |
| Accounts receivable*** | 594,903 | |
| **Available cash collateral** | **959,078** | |

*** Assumption of 15 day payment terms.  Revenue earned during weeks 3 and 4 would be collected in weeks 5 and 6.  Balance represents total of Sources from Operations for weeks 5 and 6.